Fairfax Circuit Court
ROA Listing
CL-2014-0012834

# Browns Dulles Motors Inc  vs.  Maiden Specialty Insurance Co

| Date | Code | Action | Clerk | Judge |
|------|------|--------|-------|-------|
| 10/20/2014 | SERV | Complaint Issued for Service to Maiden Specialty Insurance Co on 10/02/2014; Assigned to SECRETARY OF COMMONWEALTH, Service Fee of , 6000 Midlantic Drive Suite 200 South, Mount Laurel, NJ 08054 SERVED ON -10/20/2014 - IP | BWHILD | No Judge |
| 10/02/2014 | ISSUED | Complaint Issued for Service to Maiden Specialty Insurance Co on 10/02/2014; Assigned to SECRETARY OF COMMONWEALTH, Serve 6000 Midlantic Drive Suite 200 South, , Mount Laurel, NJ 08054 | AQUINT | No Judge |
| 10/01/2014 | AFFIDAVIT | Affidavit for Service of Process on the Secretary of the Commonwealth. | AQUINT | Plaintiff |
| | ATTY RETAINED | Appearance filed by Attorney Richard V. W. Adams III, Walton & Adams PC for Browns Dulles Motors Inc. | | |
| | A NEW CASE FILED | Complaint ($100,000.01 to $500,000) (C) filed by Adams, Richard, Receipt Amount: $296.00  Receipt #: 571215 | | |

EXHIBIT A

VIRGINIA:

IN THE CIRCUIT COURT FOR FAIRFAX COUNTY

| | |
|---|---|
| BROWN'S DULLES MOTORS, INC.,<br>D/B/A BROWN'S STERLING NISSAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. **2 0 1 4 - 1 2 8 3 4** |
| MAIDEN SPECIALTY INSURANCE | ) |
| COMPANY, | ) |
| Serve: Ms. Kari Ellis | ) |
| Office of the Secretary of the | ) |
| Commonwealth | ) |
| Service of Process Department | ) |
| P. O. Box 2452 | ) |
| Richmond, Virginia 23218-2452 | ) |
| | ) |
| Defendant. | ) |

FILED
CIVIL
2014 OCT -1 PH 12:43
JOHN T. FREY
CLERK, CIRCUIT COURT
FAIRFAX. VA

<u>COMPLAINT</u>

The plaintiff, Brown's Dulles Motors, Inc., d/b/a Brown's Sterling Nissan ("Brown's"),

by counsel, and represents to the Court as follows:

1.      The plaintiff is a corporation organized and existing under the laws of the

Commonwealth of Virginia.

2.      Upon information and belief, the defendant, Maiden Specialty Insurance

Company  is a North Carolina corporation authorized to transact business in Virginia.

3.      On October 27, 2013, the plaintiff and Ryan Walter Kratz ("Kratz") executed a

buyer's order (the "buyer's order") for the purchase and sale of a new 2014 Nissan GT-R motor

vehicle owned by the plaintiff.  The purchase price of the vehicle was $126,155.15.  A copy of

the buyer's order is attached as Exhibit A.  Kratz also executed a retail installment sale contract

1

(the "finance agreement"), a copy of which is attached as Exhibit B. The finance agreement was assigned by the plaintiff to Nissan Motor Acceptance Corporation ("NMAC").

4.    Upon information and belief, Kratz utilized a fraudulent or forged identification or signature on a credit application or finance agreement for his purchase of the vehicle, which caused the plaintiff to voluntarily part with the vehicle and title thereto.

5.    Kratz's fraudulent conduct included lying about his identity, employment position and job title, grossly inflating his annual salary and bonus on his credit application and submitting a forged letter from his purported employer as part of his fraudulent application.

6.    NMAC, upon learning of the Kratz's fraudulent credit application and finance agreement, demanded that the plaintiff repurchase the finance agreement, which the plaintiff did, at a cost of $108,598.00.

7.    Upon information and belief, Kratz is still in possession of the vehicle.

8.    As a direct and proximate result of Kratz's fraudulent or forged identification or signature on a credit application or finance agreement, the plaintiff has suffered loss and incurred damages in the amount of at least $120,000.

9.    At all times material hereto, the defendant insured the plaintiff against loss and expense suffered by the plaintiff as a result of Kratz's fraudulent conduct.  A copy of the insurance policy issued by the defendant to the plaintiff (the "Policy") is attached hereto as Exhibit C.

10.    Notwithstanding such coverage, and in breach and violation of the terms of the Policy, the defendant has denied coverage of the vehicle under the plaintiff's insurance policy and has refused to pay the plaintiff for its loss as a result of Kratz's fraudulent conduct.

11.    The plaintiff has fully complied with all material terms of the Policy.

2

12.    As a direct and proximate result of the defendant's breach of contract, the plaintiff has suffered damages and incurred expenses.

WHEREFORE, the plaintiff moves the Court for judgment against the defendant in the amount of $120,000, together with interest thereon from July 16, 2014 until paid and its costs on its behalf expended, and for such other relief as the Court may deem proper.

Respectfully submitted,

BROWN'S DULLES MOTORS,
INC., D/B/A BROWN'S STERLING
NISSAN
By Counsel

WALTON & ADAMS, P.C.

By:    _Richard V.U. adams III, MAH_
       Richard V.W. Adams, III, VSB No. 18121
       1925 Isaac Newton Square
       Suite 250
       Reston, Virginia 20190
       703-748-9580 Telephone
       703-790-8016 Fax
       radams@walton-adams.com
       Counsel for Plaintiff

3

**BROWN'S**
**DULLES NISSAN**

45155 Towlern Place
Sterling, VA 20166
Phone (703) 948-1100
www.BrownsCar.com

NISSAN

**BUYERS ORDER**

E-MAIL: Rkratz@crisco.com
PHONE B. (703) 484-3000
H. (202) 487-1313

EXHIBIT
A

| | |
|---|---|
| PURCHASER'S FULL NAME | RYAN WALTER KRATZ |
| CO-PURCHASER'S FULL NAME | |
| ADDRESS | 1000 POWELLS LANDING CIRCLE |
| CITY, STATE, ZIP | WOODBRIDGE VA 22191 |

DATE 10/27/2013

☒ NEW ☐ USED ☐ DEMO

| MAKE | MODEL & TYPE | TRANS. | COLOR EXT. | COLOR INT. | MILEAGE | MODEL YEAR |
|---|---|---|---|---|---|---|
| NISSAN | GT-R GT-R | | JET BLACK | BLACK (BL) | 405 | 2011 |
| STOCK NO. 1752 | SERIAL NO. JN1AR5EF0FM270GG1 | | CONTROL NO. 090:: | KEY NO. | TO BE DELIVERED | |

CASH PRICE OF CAR INCLUDES INLAND FREIGHT, GAS AND ANY ADDITIONAL DEALER MARKUP — 105500.00

D.O.B.
NO./D.C. DRIVERS LICENSE # 2113058

D.O.B.
NO./D.C. DRIVERS LICENSE #

PROTECTION PKG — 900.00
AFTERMARKET TAX — 59.88

JUDGMENT FOR $ [illegible]
ENTERED 3-D 20 1Y
[signature]
JUDGE, LOUDOUN COUNTY
GENERAL DISTRICT COURT

FOR "AS IS" SALE ONLY: I UNDERSTAND THAT THIS VEHICLE IS BEING SOLD "AS IS" WITH ALL FAULTS AND IS NOT COVERED BY ANY DEALER WARRANTY. I UNDERSTAND THAT THE DEALER IS NOT REQUIRED TO MAKE ANY REPAIRS AFTER I BUY THIS VEHICLE. I WILL HAVE TO PAY FOR ANY REPAIRS THIS VEHICLE WILL NEED. (SEE #16 ON REVERSE SIDE)

DATE _____ SIGNATURE _____

| PROCESSING FEE | 489.00 XXXXX |
|---|---|
| TOTAL | 107185.88 |
| TITLING TAX | 4565.37 |
| PURCHASER'S ONLINE VEHICLE REGISTRATION FEE | 10.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | 10.00 | | 214.15 | N/A | 44.75 | N/A | 228.90 |
| NO. | VA | DC | DEALER'S BUSINESS LICENSE TAX | TRANSFER | NEW | USED | |

| | N/A |
|---|---|
| TOTAL CASH PRICE | 112040.15 |

| | | | |
|---|---|---|---|
| CREDITS | DEPOSIT DUE WITH ORDER | THIS BUYERS ORDER IS NOT A CASH RECEIPT | N/A |
| | ALLOWANCE FOR USED CAR TRADE-IN | | N/A |
| | LESS APPROXIMATE BALANCE OWING TO | | N/A |
| | NET TRADE | | N/A |

| | 20000.00 |
|---|---|

DESCRIPTION OF TRADE-IN

| MAKE | MODEL | TYPE | YEAR |
|---|---|---|---|
| LIC. NO. | | | MILEAGE TRADE |
| COLOR | STATE | TAG NO. | |

| TOTAL CREDITS | 20000.00 |
|---|---|
| EXT. SERVICE CONTRACT | 14075.00 |
| BALANCE DUE ON DELIVERY | 106165.15 |

## NO LIABILITY INSURANCE INCLUDED

IF YOU ARE FINANCING THIS VEHICLE PLEASE READ THIS NOTICE: YOU ARE PROPOSING TO ENTER INTO A RETAIL INSTALLMENT SALES CONTRACT WITH THE DEALER. PART OF YOUR CONTRACT INVOLVES FINANCING THE PURCHASE OF YOUR VEHICLE. IF YOU ARE FINANCING THIS VEHICLE AND THE DEALER INTENDS TO TRANSFER YOUR FINANCING TO A FINANCE PROVIDER SUCH AS A BANK, CREDIT UNION OR OTHER LENDER, YOUR VEHICLE PURCHASE DEPENDS ON THE FINANCE PROVIDER'S APPROVAL OF YOUR PROPOSED RETAIL INSTALLMENT SALES CONTRACT. IF YOUR RETAIL INSTALLMENT SALES CONTRACT IS APPROVED WITHOUT A CHANGE THAT INCREASES THE COST OR RISK TO YOU OR THE DEALER, YOUR PURCHASE CANNOT BE CANCELLED. IF YOUR RETAIL INSTALLMENT SALES CONTRACT IS NOT APPROVED THE DEALER WILL NOTIFY YOU VERBALLY OR IN WRITING. YOU CAN THEN DECIDE TO PAY FOR THE VEHICLE IN SOME OTHER WAY OR YOU OR THE DEALER CAN CANCEL YOUR PURCHASE. IF THE SALE IS CANCELLED, YOU NEED TO RETURN THE VEHICLE TO THE DEALER WITHIN 24 HOURS OF VERBAL OR WRITTEN NOTICE IN THE SAME CONDITION IT WAS GIVEN TO YOU, EXCEPT FOR NORMAL WEAR AND TEAR. ANY DOWN PAYMENT OR TRADE-IN YOU GAVE THE DEALER WILL BE RETURNED TO YOU. IF YOU DO NOT RETURN THE VEHICLE WITHIN 24 HOURS OF VERBAL OR WRITTEN NOTICE OF CANCELLATION, THE DEALER MAY LOCATE THE VEHICLE AND TAKE IT BACK WITHOUT FURTHER NOTICE TO YOU AS LONG AS THE DEALER FOLLOWS THE LAW AND DOES NOT CAUSE A BREACH OF THE PEACE WHEN TAKING THE VEHICLE BACK. IF THE DEALER DOES NOT RETURN YOUR DOWN PAYMENT AND ANY TRADE-IN WHEN THE DEALER GETS THE VEHICLE BACK IN THE SAME CONDITION IT WAS GIVEN TO YOU, EXCEPT FOR NORMAL WEAR AND TEAR, THE DEALER MAY BE LIABLE TO YOU UNDER THE VIRGINIA CONSUMER PROTECTION ACT. IF YOU ARE LEASING THIS VEHICLE, THE SAME PROCEDURES, RIGHTS, AND OBLIGATIONS APPLICABLE TO A TRANSACTION INVOLVING A RETAIL INSTALLMENT SALES CONTRACT STATED ABOVE APPLY TO THIS LEASE TRANSACTION.

We certify that we are 18 years of age or older and hereby acknowledge receipt of a copy of this Order. We authorize the Dealer to make whatever credit inquiries it deems necessary in connection with this Order. Purchaser understands and agrees that the Annual Percentage Rate ("APR") for any installment sale of the vehicle ordered hereunder may be negotiated with Dealer and that Dealer may assign the Installment Sale Contract and receive some portion of the finance charge or other compensation for providing or arranging financing, service contracts or other products. We have read the terms and conditions of this Order including those on the reverse side hereof. We agree that the terms and conditions on the reverse side are as much a part of this Order as if they were printed above our signatures. We specifically acknowledge that Paragraph 21 on the reverse side hereof, requiring arbitration of any disputes, has been reviewed with us and we understand those terms and conditions.

WILLIAM WEAVER III
SALESMAN

APPROVED: [signature]
THIS ORDER IS NOT VALID UNLESS SIGNED AND ACCEPTED BY SALES MANAGER

E-STAMP# (703) 268-8853

SIGNED [signature] PURCHASER
SIGNED _____ PURCHASER
INS. CO. GEICO
AGENT R1KRT PHONE # (800) 841-3000
POLICY NO. 4292300U:: EFFECTIVE DATE _____

**EXHIBIT B**

## ADDITIONAL TERMS AND CONDITIONS

19. Notice: This new motor vehicle has accumulated mileage in excess of 750 miles as the result of use as a demonstrator and/or as the result of delivery to a prior prospective customer who never took title to it and who returned it.

20. EACH PARTY HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE EXTENT PERMITTED BY APPLICABLE LAW, TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AND ANY OTHER DOCUMENT RELATED HERETO.

21. WE AGREE THAT ANY DISPUTE (AS DEFINED BELOW) SHALL BE RESOLVED BY BINDING ARBITRATION THROUGH THE AMERICAN ARBITRATION ASSOCIATION, UNDER ITS RULES AND PROCEDURES THEN IN EFFECT. INFORMATION MAY BE OBTAINED AND FORMS MAY BE FILED ELECTRONICALLY AT WWW.ADR.ORG OR AT ANY OFFICE OF THE AMERICAN ARBITRATION ASSOCIATION OR BY MAIL AT 2200 CENTURY PARKWAY, SUITE 300, ATLANTA, GEORGIA 30345. THIS AGREEMENT IS MADE PURSUANT TO A TRANSACTION INVOLVING INTERSTATE COMMERCE AND SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT, 9 U.S.C. SECTIONS 1-16. ANY ARBITRATION HEARING SHALL TAKE PLACE IN THE STATE AND COUNTY WHERE DEALER IS LOCATED AND THE ARBITRATOR SHALL APPLY THE SUBSTANTIVE LAW OF SUCH STATE. JUDGMENT UPON ANY AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. THE PARTIES ACKNOWLEDGE THAT THEY HAVE KNOWINGLY WAIVED THEIR RIGHTS TO A JUDGE OR JURY TRIAL. THE COMMENCEMENT OF A LAWSUIT, ADMINISTRATIVE PROCEEDING OR OTHER ACTION AGAINST THE OTHER PARTY RELATING TO A DISPUTE SHALL CONSTITUTE A BREACH OF THIS AGREEMENT. AS USED HEREIN, A DISPUTE IS ANY CLAIM, DISPUTE OR CONTROVERSY DIRECTLY OR INDIRECTLY RELATING TO (I) THIS TRANSACTION; (II) ANY VEHICLE INVOLVED IN THIS TRANSACTION; (III) THIS AGREEMENT OR ANY OTHER AGREEMENT RELATING TO THIS TRANSACTION, PROVIDED HOWEVER THAT DEALER'S USE OF REPOSSESSION, REPLEVIN, DETINUE OR ANY OTHER REMEDY, WITH OR WITHOUT JUDICIAL PROCESS, TO ENFORCE ANY COLLATERAL, SECURITY OR PROPERTY INTEREST OR TO OBTAIN TITLE TO A TRADE-IN VEHICLE, SHALL NOT BE CONSIDERED A DISPUTE AND SHALL NOT BE SUBJECT TO ARBITRATION. THIS AGREEMENT SHALL NOT BE CONSTRUED TO PERMIT CLASS-WIDE ARBITRATION ON ANY CLAIM. YOU SHALL NOT HAVE ARBITRATION ARISING OUT OF OR RELATING TO THIS AGREEMENT INCLUDE, BY CONSOLIDATION, JOINDER OR OTHERWISE, AN ADDITIONAL PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT, EXCEPT BY WRITTEN CONSENT CONTAINING A SPECIFIC REFERENCE TO THIS AGREEMENT AND SIGNED BY DEALER, PURCHASER(S) AND ANY PERSON OR ENTITY SOUGHT TO BE JOINED. CONSENT TO ARBITRATION INVOLVING AN ADDITIONAL PERSON OR ENTITY SHALL NOT CONSTITUTE CONSENT TO ARBITRATION OF ANY CLAIM, DISPUTE OR OTHER MATTER IN QUESTION NOT DESCRIBED IN THE WRITTEN CONSENT OR WITH A PERSON OR ENTITY NOT NAMED OR DESCRIBED THEREIN. THESE LIMITATIONS ON CLASS-WIDE AND CONSOLIDATED ARBITRATION ARE ESSENTIAL TERMS THAT ARBITRATION COURTS AND ARBITRATORS CAN SEVER FROM THIS AGREEMENT TO ARBITRATE. APART FROM THE LIMITATIONS ON CLASS-WIDE AND CONSOLIDATED ARBITRATION, IN THE EVENT A COURT HAVING JURISDICTION FINDS ANY PORTION OF THIS PARAGRAPH UNENFORCEABLE, THE REMAINING TERMS SHALL CONTINUE IN EFFECT.

EXHIBIT B

## SIMPLE FINANCE CHARGE

Dealer Number _____   Contract Number _____

EXHIBIT

B

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| RYAN WALTER KRATZ 1880 POWELLS LANDING CIRCLE WOODBRIDGE VA 22191 PRINCE WILLIAM | N/A | BROWNS DULLES NISSAN 45155 TOWLERN PLACE STERLING VA 20166 LOUDON |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| NEW | 2014 | NISSAN GT-R | JN1AR5EF0EM270661 | ☒ personal, family or household ☐ business ☐ agricultural |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 20000.00 |
|---|---|---|---|---|
| 3.99 % | $ 11115.05 | $ 106155.15 | $ 117271.20 | $ 137271.20 |

#### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | 1954.52 | Monthly beginning 11/26/2013 |

Or As Follows: N/A

N/A

N/A

**Late Charge.** If payment is not received in full within __7__ days after it is due, you will pay a late charge of __5__ % of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED

| | | | | |
|---|---|---|---|---|
| 1 Cash Price (including $ 4243.12 sales tax) | | | | $ 110830.12(1) |
| 2 Total Downpayment = | | | | |
| Trade-In  N/A | | | | |
| (Year)      (Make)      (Model) | | | | |
| Gross Trade-In Allowance | | $ | N/A | |
| Less Pay Off Made By Seller | | $ | N/A | |
| Equals Net Trade In | | $ | N/A | |
| + Cash | | $ | 20000.00 | |
| + Other  N/A | | $ | N/A | |
| (If total downpayment is negative, enter "0" and see 4I below) | | | $ | 20000.00(2) |
| 3 Unpaid Balance of Cash Price (1 minus 2) | | | $ | 90830.12(3) |
| 4 Other Charges including Amounts Paid to Others on Your Behalf | | | | |
| (Seller may keep part of these amounts): | | | | |
| A Cost of Optional Credit Insurance | | | | |
| Paid to Insurance Company or Companies. | | | | |
| Life | | $ | N/A | |
| Disability | | $ N/A | $ | N/A |
| B Vendor's Single Interest Insurance | | | | |
| Paid to Insurance Company(ies). | | | $ | N/A |
| C Other Optional Insurance Paid to Insurance Company or Companies | | | $ | N/A |
| D Optional Gap Contract | | | $ | N/A |
| E Official Fees Paid to Government Agencies | | | $ | N/A |
| 1) to  N/A   for  N/A | | | $ | N/A |
| 2) to  STATE OF VA   for  GROSS REC TAX | | | $ | 214.15 |
| 3) to  N/A   for  N/A | | | $ | N/A |
| F Government Taxes Not Included in Cash Price | | | $ | 482.13 |
| G Government License and/or Registration Fees | | | | |
| LICENSE/ONLINE REG | | | $ | 54.75 |
| H Government Certificate of Title Fees | | | $ | 10.00 |
| I Other Charges (Seller must identify who is paid and describe purpose.) | | | | |
| 1) to  N/A   for Prior Credit or Lease Balance | | | $ | N/A |
| 2) to  NISSAN   for  SERVICE CONTRACT | | | $ | 7500.00 |
| 3) to  SECLER   for  PROCESSING FEE | | | $ | 485.00 |
| 4) to  NISSAN   for  SECURITY PLUS | | | $ | 6575.00 |
| 5) to  N/A   for  N/A | | | $ | N/A |
| 6) to  N/A   for  N/A | | | $ | N/A |
| 7) to  N/A   for  N/A | | | $ | N/A |
| 8) to  N/A   for  N/A | | | $ | N/A |
| Total Other Charges and Amounts Paid to Others on Your Behalf | | | $ | 15325.03 (4) |

---

Insurance. You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is authorized in and each insurance in Virginia. Your choice will not affect our decision to extend credit or the terms of this contract. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:

**Optional Credit Insurance**

☐ Credit Life:  ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both
Premium:
  Credit Life $ _____ N/A
  Credit Disability $ _____ N/A
Insurance Company Name _____
  N/A
Home Office Address ___ N/A

Credit life insurance and credit disability insurance are not required to obtain credit (see back). You have the right to use alternate coverage or buy such insurance elsewhere. Your choice of insurer will not affect our decision to extend credit or the terms of this contract. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**

☐ _____ N/A

Type of Insurance _____ Term
Premium $ _____ N/A
Insurance Company Name  N/A
_____
Home Office Address  N/A
  N/A

Type of Insurance _____ Term
Premium $ _____ N/A
Insurance Company Name  N/A
  N/A
Home Office Address  N/A
  N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost. Your choice of insurer will not affect our decision to extend credit or the terms of this contract.
I want the insurance checked above.

X ___ N/A
Buyer Signature _____ Date

X N/A
Co-Buyer Signature _____ Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE.**

| | | | |
|---|---|---|---|
| Disability | $ | N/A | $ | N/A |

**B** Vendor's Single Interest Insurance Paid to Insurance Company(ies). ... $ ___ N/A
**C** Other Optional Insurance Paid to Insurance Company or Companies ... $ ___ N/A
**D** Optional Gap Contract ... $ ___ N/A
**E** Official Fees Paid to Government Agencies ... $ ___ N/A

| | | | |
|---|---|---|---|
| 1) to N/A | for N/A | $ | N/A |
| 2) to STATE OF VA | for GROSS REC TAX | $ | 214.15 |
| 3) to N/A | for N/A | $ | N/A |

**F** Government Taxes Not Included in Cash Price ... $ 482.13
**G** Government License and/or Registration Fees
LICENSE/ONLINE REG ... $ 54.75
**H** Government Certificate of Title Fees ... $ 10.00
**I** Other Charges (Seller must identify who is paid and describe purpose.)

| | | | |
|---|---|---|---|
| 1) to N/A | for Prior Credit or Lease Balance | $ | N/A |
| 2) to NISSAN | for SERVICE CONTRACT | $ | 7500.00 |
| 3) to SELLER | for PROCESSING FEE | $ | 489.00 |
| 4) to NISSAN | for SECURITY PLUS | $ | 6575.00 |
| 5) to N/A | for N/A | $ | N/A |
| 6) to N/A | for N/A | $ | N/A |
| 7) to N/A | for N/A | $ | N/A |
| 8) to N/A | for N/A | $ | N/A |

Total Other Charges and Amounts Paid to Others on Your Behalf $ 15325.03 (4)
**5** Amount Financed (3 + 4) $ 106155.15 (5)

OPTION: ☐ You pay no finance charge if the Amount Financed, Item 5, is paid in full on or before ___ N/A ___ , Year ___ N/A ___ . SELLER'S INITIALS N/A

(right column)
Premium $ ___ N/A
Insurance Company Name N/A
Home Office Address N/A
☐ N/A — Type of Insurance — Term
Premium $ N/A
Insurance Company Name N/A
Home Office Address N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost. Your choice of insurance will not affect our decision to extend credit or the terms of this contract.
I want the insurance checked above.
X N/A
Buyer Signature — Date
X N/A
Co-Buyer Signature — Date
THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE.

Returned Check Charge: If any check you give us is dishonored, we may, at our option, charge you $ 50

☐ **VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance):** If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ N/A and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract. See back of this contract for more information.

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.
Term N/A Mos. N/A Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X N/A

### NO COOLING OFF PERIOD
State law does not provide for a "cooling-off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**HOW THIS CONTRACT CAN BE CHANGED.** This contract, along with all other documents signed by you in connection with the purchase of the vehicle, comprise the entire agreement between you and us affecting this purchase. No oral agreements or understandings are binding. Upon assignment of this contract: (i) only this contract and addenda to this contract comprise the entire agreement between you and the assignee relating to this contract; (ii) any change to this contract must be in writing and the assignee must sign it; and (iii) no oral changes are binding. Buyer Signs X ___ Co-Buyer Signs X N/A
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See back for other important agreements.

## NO LIABILITY INSURANCE INCLUDED
**NOTICE TO RETAIL BUYER:** Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read both sides of this contract, including the arbitration clause on the reverse side, before signing below. You confirm that you received a completely filled-in copy when you signed it.
Buyer Signs X ___ Date 10/27/13 Co-Buyer Signs X N/A Date N/A
Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.
Other owner signs here X N/A Address N/A
Seller signs ___ Date 10/27/13 By X ___ Title ___

Seller assigns its interest in this contract to ___ (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse. ☐ Assigned without recourse ☐ Assigned with limited recourse
Seller ___ By ___ Title ___

LAW FORM NO. 553-VA-ARB

FILE COPY

EXHIBIT B

## OTHER IMPORTANT AGREEMENTS

**1. FINANCE CHARGE AND PAYMENTS**

a. **How we will figure the Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

e. **Your right to refinance a balloon payment.** A balloon payment is any payment other than a down payment that is more than 10% greater than the regular or recurring installment payments. If you use the vehicle primarily for consumer purposes, you have the right to refinance a balloon payment over an extended period with additional payments. The additional periodic payments will not be more than 10% greater than the regularly scheduled installment payments.

**2. YOUR OTHER PROMISES TO US**

a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. **Security interest.**
   You give us a security interest in:
   • The vehicle and all parts or goods put on it;
   • All money or goods received (proceeds) for the vehicle;
   • All insurance, maintenance, service, or other contracts we finance for you; and
   • All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
   This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.

d. **Insurance** you must have on the vehicle.
   You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge equal to the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits.
   If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may

b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
   • You pay any payment (plus any late charges) more than 10 days late or not at all;
   • You give us false, incomplete, or misleading information on a credit application;
   • You start a proceeding in bankruptcy or one is started against you or your property; or
   • You break any agreements in this contract.
   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. **You may have to pay our collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. You will also pay any collection costs we incur as the law allows.

d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peaceably and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
   We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, you may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. **What we may do about optional insurance, maintenance, service or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4. WARRANTIES SELLER DISCLAIMS**

Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose. Any implied warranties arising from a written warranty or service contract are limited to the duration of such written warranty or service contract.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**5. Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
**Spanish Translation:** Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**6. VSI and Optional Insurance**
Choice of insurer. If vendor's single interest insurance is required (as indicated on the front), or if you desire optional insurance, such as credit life insurance or credit disability insurance, you have the right to use alternative coverage

You will make sure the title shows our security interest (lien) in the vehicle.

d. **Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge equal to the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits.
If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
a. You may owe late charges. You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

5. **Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

6. **VSI and Optional Insurance**
Choice of insurer. If vendor's single interest insurance is required (as indicated on the front), or if you desire optional insurance, such as credit life insurance or credit disability insurance, you have the right to use alternative coverage or to buy insurance elsewhere from the agent or insurer of your choice. You may also buy required physical damage insurance from the agent or insurer of your choice. Your choice of agent or insurer will not affect our decision to extend credit or your credit terms.

7. **Servicing and Collection Contacts.**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

8. **Applicable Law**
Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only if the "personal, family or household" box in the "Primary Use for Which Purchased" section of this contract is checked. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

---

**ARBITRATION CLAUSE**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose one of the following arbitration organizations and its applicable rules: the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.arb-forum.com), the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org), or any other organization that you may choose subject to our approval. You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside unless the Creditor-Seller is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable.

Form No. 553-VA-ARB Rev. 4/10 (AG.10)



# Maiden Specialty Insurance Company

## MOTORS INVENTORY COVERAGE
## TABLE OF CONTENTS

DECLARATIONS

TABLE OF CONTENTS    1

PART I - DEFINITIONS    2

PART II - COVERAGES    4

     A. COVERAGE    4

         1. Inventory Comprehensive, Demonstrator Comprehensive and Shop Rental Comprehensive    4

         2. Inventory Collision, Demonstrator Collision and Shop Rental Collision    4

         3. False Pretense Coverage    4

     B. EXCLUSIONS    4

     C. LIMITS OF INSURANCE    6

     D. DEDUCTIBLES    7

PART III - CONDITIONS    8

     A. LOSS CONDITIONS    8

     B. GENERAL CONDITIONS    9

EXHIBIT B

# AUTOMOBILE PHYSICAL DAMAGE POLICY

**PLEASE READ THIS POLICY CAREFULLY.**

**THIS POLICY DOES NOT PROVIDE BODILY INJURY LIABILITY, PROPERTY DAMAGE LIABILITY, OR ANY OTHER COVERAGE FOR WHICH A SPECIFIC PREMIUM CHARGE IS NOT MADE. THIS POLICY DOES NOT SATISFY FINANCIAL RESPONSIBILITY LAWS OR STATUTORY REQUIREMENTS FOR NO-FAULT COVERAGES.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to Maiden Specialty Insurance Company, the Company providing this insurance.

## PART I - DEFINITIONS

The following words and phrases have special meaning throughout this policy and appear in boldface type when used.

A. **Actual Cash Value** means the value of a similar covered auto of like kind and quality at the time and place of loss.

B. **Actual Repair Cost:**
   1. For repairs you perform or repairs performed by a repair facility in which you have a financial interest, **actual repair cost** means the list price of parts less 25%, plus the customary insurance labor rate less 10%, unless another amount is shown in the Declarations.
   2. If you subcontract all or part of the repair to a repair facility in which you, your officers, shareholders or employees have no financial interest, **actual repair cost** for the subcontracted work will be the actual price paid by you to the repair facility.

C. **Actual Selling Price** means the final retail or wholesale price of a covered auto, including commission, but excluding, taxes, license, registration and tags. If the covered auto is not repaired prior to sale, **actual selling price** must include our appraised value of the actual repair cost.

D. **Collision** means loss, unless excluded, to a covered auto that is the result of the covered auto striking or being struck by another vehicle or object, or the upset of a covered auto.

E. **Comprehensive** means loss, unless excluded, to a covered auto from any cause of loss, other than loss due to collision or loss due to false pretense.

F. **Covered Auto** means:
   1. A land motor vehicle, trailer, or semitrailer, including any permanently attached equipment, which you own.
   2. A land motor vehicle, trailer, or semitrailer, including any permanently attached equipment, that you do not own, but is in your possession on consignment for sale.
   3. Any watercraft taken in trade that you own while such watercraft is on land.
   4. Any vehicle that you or your employee do not own that you or your employee hires or borrows for a period of less than one year.

 Contains copyrighted material of the Insurance Services Office with its permission

5. Any vehicle that you lease for a period of one year or more.

G. **Demonstrator** means a covered auto that is furnished to persons or entities for their use regardless of whether or not they are employees.

H. **Diminution in value** means the actual or perceived reduction, if any, between the value of a covered auto prior to damage and its value following damage or repair.

I. **Economic Loss** means:
   1. The difference between the actual selling price of a damaged new covered auto and the wholesale value, if the actual selling price is lower than the wholesale value as a result of a collision loss; and
   2. The reduction in value to a new covered auto specifically due to miles added to the odometer reading as a result of a total theft loss.

J. **False Pretense** means loss, resulting from a person or entity causing you, your officers, shareholders or employees to voluntarily part with a covered auto or the title or other evidence of ownership of a covered auto by use of trick, scheme or device.

K. **Inventory** means a covered auto that is neither a demonstrator nor a shop rental vehicle.

L. **Location** means one or more physical properties at which covered autos are held for sale, stored or used in your business which are contiguous with one another, or at which the boundaries are not separated by more than 500 feet.

M. **Loss** means direct and accidental loss or damage to covered autos resulting from a single cause or event. Loss does not include diminution in value.

N. **New Covered Auto or New Demonstrator** means a covered auto that is of the current model year, or the immediately prior model year, that has never been titled or registered.

O. **Sale or Sold** means the completion of the transaction, including:
   1. The transfer of title or certificate of ownership; or
   2. Payment in full of the covered auto; or
   3. The arrangement and financing or lease agreement on a covered auto; or
   4. A transaction as meets the definition of a sale in your state.

P. **Shop Rental** means a covered auto that is:
   1. Provided to any entity whose owned vehicle has been left with you for service or repairs, whether or not a rental charge has been made; or
   2. Used in the conduct of your business, but not as a demonstrator.

Q. **Total Loss** means that the cost of repair of a covered auto plus the salvage value of the covered auto exceeds the wholesale value of the covered auto.

R. **Total Theft Loss** means the theft of the entire covered auto, or multiple covered autos whether ultimately recovered or not, unless the loss is a False Pretense Loss.

S. **Weather Loss** means any and all causes of loss due to a weather condition including hail, windstorm, flood, sandstorm, tidal surge, weight of snow or ice, tornado, hurricane, tropical storm, tropical depression and rain.

T. **Wholesale Value** means:
   1. For a new covered auto or new demonstrator which:
      a. Has not been damaged in a previous loss,

EXHIBIT B

    b. Has not been registered or titled,

    c. Has an odometer reading of 7,500 miles or less, and

    d. Has not been used for any purpose other than road testing, dealer exchanges, transporting to or from conversion or upfitting facilities, or as a demonstrator, the amount of the dealer invoice. Finance and insurance charges, advertising expenses, and any model changeover credit are excluded from wholesale value.

2. For other than a new covered auto or new demonstrator, the lesser of:

    a. Your actual cost, exclusive of your overhead expenses, mileage, and wear and tear; or,

    b. The value, as determined by us based on auction reports and dealer wholesale reports on a similar auto in your area.

**Wholesale value**, as respects a covered auto, includes the cost of equipment and accessories, which are permanently attached to the covered auto.

---

## PART II -COVERAGES

A. **COVERAGE.** When a premium is shown in the Declarations, coverage is provided under:

1. **Inventory Comprehensive, Demonstrator Comprehensive and Shop Rental Comprehensive.** We will pay for loss, (including economic loss in a total theft loss), unless excluded, to a covered auto from any cause except:

    a. Loss due to collision.

    b. Loss due to false pretense.

    If you have collision coverage, you have the option of having glass breakage caused by a covered auto's collision or overturn considered a loss under collision.

2. **Inventory Collision, Demonstrator Collision and Shop Rental Collision Coverage.** We will pay for loss, unless excluded, to a covered auto caused by collision.

3. **False Pretense Coverage.** We will pay for false pretense loss, unless excluded, up to the amounts stated in C. LIMITS OF INSURANCE. 4. False Pretense to, a covered auto if the trick, scheme or device consists of:

    a. The use of a check, draft, or other similar negotiable instrument that is forged, counterfeit, drawn on a non-existent account, or drawn on an account closed prior to acceptance by you or your employee; or

    b. The use of fraudulent or forged identification or signature of an applicant or customer on a credit application or finance, lease, or rental agreement for a covered auto or;

    c. Your acquiring an auto from a seller who did not have legal title, including an auto that is stolen, or which has a title that is counterfeit, forged, altered or is otherwise invalid.

B. **EXCLUSIONS.**

1. We will not pay for a loss caused by or resulting from any of the following. Any such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

    a. Nuclear Hazard:

        (1) The explosion of any weapon employing atomic fission or fusion; or

        (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

    b. War or Military Action:

        (1) War, including undeclared or civil war;

        (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

        (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for:

    a. Your expected profit;

    b. Loss of use of a covered auto; or

c. The reduction in value of a covered auto as a consequence of decisions or actions of the manufacturer of the covered auto. This includes the decision to void the manufacturer's warranty, or the decision to remove the covered auto from the stream of commerce.

3. We will not pay for loss:

   a. Due to conversion, embezzlement, or concealment of a covered auto committed by any person in lawful possession of such covered auto, except as stated in PART II - COVERAGES, A. 3. False Pretense coverage;

   b. Caused by a check, draft, or other negotiable instrument, which is uncollectable for any reason other than as stated in PART II - COVERAGES, A. 3. False Pretense coverage;

   c. Caused by an undisclosed lien on an auto you acquire;

   d. Caused by the transfer of a covered auto or covered autos to a person or entity with which you have a business relationship or with which you have had a prior business relationship;

   e. Caused by failure or refusal of a person or entity to make payments agreed upon in a lease, rental agreement, or purchase agreement;

   f. Caused by the inability of a purchaser to secure credit;

   g. Caused by a person or entity's insolvency, bankruptcy,  or similar federal or state proceeding, including the assignment or seizure of assets for the benefit of creditors;

   h. Arising out of infidelity or dishonesty of an employee;

   i. If there is collusion between you or your employee and anyone causing the loss.

4. We will not pay for Economic Loss if the covered auto is sold to:

   a. An entity in which you have a financial interest;

   b. Your shareholder or employee, or shareholder or an employee of an entity in which you have financial interest; or

   c. A relative of an employee or shareholder identified in 4. b., above.

5. We will not pay for loss caused by or resulting from any of the following unless caused by another loss that is covered by this insurance:

   a. Wear and tear, freezing, mechanical or electrical breakdown, improper service; or

   b. Blowouts, punctures or other road damage to tires.

6. We will not pay for loss to any of the following:

   a. Any covered auto loaned, leased or rented to others, but this exclusion does not apply to a covered auto loaned, leased or rented to one of your customers:

      (1) While their auto is left with you for service or repair; or

      (2) For a term of two months or less when a covered auto temporarily replaces the customer's auto because of loss or damage or while the customer is awaiting delivery of an auto purchased from you.

   b. Any covered auto used in any professional or organized racing, acceleration or demolition contest or stunting activity. We will not pay for loss to any covered auto while being prepared for such event, contest, or activity.

   c. Tape decks or other sound or video reproducing equipment, unless permanently installed in a covered auto;

   d. Tapes, records, discs or similar audio, visual or data reproduction media;

   e. Sound receiving equipment designed for two-way mobile radio or telephone or scanning monitor receiver, including antennas and other accessories, unless permanently installed in a covered auto;

   f. Equipment designed or used for the detection or location of radar or laser speed measuring devices;

   g. Any covered auto after it has been sold and delivered to a customer under a sale or lease agreement; or

   h. Personal effects or apparel in a covered auto.

7. We will not pay for:

   a. Loss to any auto that is insured in connection with your automobile inventory floor plan agreement or financing source;

   b. Application of deductible under the insurance provided in connection with your automobile inventory floor plan agreement or financing source; or

EXHIBIT B

c. Loss excluded under the insurance provided in connection with your automobile inventory floor plan agreement or financing source.

This exclusion does not apply to the amount of loss attributable to equipment permanently affixed to the covered auto and not insured by your automobile inventory floor plan agreement or financing source.

8. We will not pay for diminution in value.

C. LIMITS OF INSURANCE. Regardless of the limit of insurance applicable to all Inventory, Demonstrator or Shop Rental covered autos, the most we will pay for loss to any single covered auto is $200,000. The amount we will pay for loss to a covered auto is also limited by the amount of annual policy period limits available due to loss caused by false pretense.

1. Inventory Comprehensive. Regardless of the number of covered autos involved in the loss or the number of locations, the most we will pay, for all loss under Inventory Comprehensive Coverage is the Limit of Insurance shown on the Declarations for Inventory Comprehensive Coverage. However, if, at the time of the loss the actual value of the inventory is greater than Limit of Insurance shown in the Declarations for Inventory Comprehensive Coverage then we will pay for all loss up to the actual value of the inventory at the time of the loss provided that:

   a. The covered loss exceeds the Limit of Insurance for Inventory Comprehensive Coverage;

   b. The value of the covered loss can be substantiated by your books and that the amount of the covered loss does not exceed the amount that can be substantiated by your books; and,

   c. The Limit of Insurance shown in the Declarations for Inventory Comprehensive Coverage is equal to, or greater than, the highest monthly value of your inventory, according to your books, for the twelve (12) months immediately prior to the effective date of this policy.

2. Demonstrator Comprehensive. Regardless of the number of covered autos involved in the loss or the number of locations, the most we will pay for all loss under Demonstrator Comprehensive Coverage is the Limit of Insurance shown on the Declarations for Demonstrator Comprehensive Coverage. However, if, at the time of the loss the actual value of the demonstrator covered autos is greater than Limit of Insurance shown in the Declarations for Demonstrator Comprehensive Coverage then we will pay for all loss up to the actual value of the demonstrator covered autos at the time of the loss provided that:

   a. The covered loss exceeds the Limit of Insurance for Demonstrator Comprehensive Coverage;

   b. The value of the covered loss can be substantiated by your books and that the amount of the covered loss does not exceed the amount that can be substantiated by your books;

   c. The Limit of Insurance shown in the Declarations for Demonstrator Comprehensive Coverage is equal to, or greater than, the highest monthly value of your inventory, according to your books, for the twelve (12) months immediately prior to the effective date of this policy.

3. Shop Rental Comprehensive. Regardless of the number of covered autos involved in the loss or the number of locations, the most we will pay for all loss under Shop Rental Comprehensive Coverage is the Limit of Insurance shown on the Declarations for Shop Rental Comprehensive Coverage. However, if, at the time of the loss the actual value of the shop rental covered autos is greater than Limit of Insurance shown in the Declarations for Shop Rental Comprehensive Coverage then we will pay for all loss up to the actual value of the shop rental covered autos at the time of the loss provided that:

   a. The covered loss exceeds the Limit of Insurance for Shop Rental Comprehensive Coverage;

   b. The value of the covered loss can be substantiated by your books and that the amount of the covered loss does not exceed the amount that can be substantiated by your books; and,

   c. The Limit of Insurance shown in the Declarations for Shop Rental Comprehensive Coverage is equal to, or greater than, the highest monthly value of your inventory, according to your books, for the twelve (12) months immediately prior to the effective date of this policy.

4. Repair or Replacement. The most we will pay for loss to any one covered auto is:

   a. Your wholesale value if the covered auto is a total loss; or

   b. The actual repair cost if the covered auto is not a total loss.

   c. The most we will pay for economic loss due to collision to any new covered auto or new demonstrator is $1,000 or 10% of the wholesale value, whichever is less.

   d. The most we will pay for economic loss due to increased odometer mileage is 50% of the recognized mileage usage rate published in Federal taxation guidelines times the miles added to the odometer as a result of a total theft loss.

   e. We will pay economic loss only:

     (1) For a new covered auto or new demonstrator, as a result of collision or total theft loss if:

       i. The actual repair cost of the covered auto exceeds 10% of the wholesale value, and

       ii. The covered auto is a private passenger vehicle or truck type of vehicle with a Gross Vehicle Weight of 11,500 pounds or less.

     (2) For a reduction in value to a covered auto specifically caused by an increase in odometer mileage to a new covered auto or a new demonstrator as a result of a total theft loss.

5. False Pretense. Regardless of the number of covered autos involved in the loss, or the number of losses, the most we will pay for false pretense losses during the policy period is;

   a. The amount shown on the Declarations as "per location" for any loss at a location;

   b. The amount shown on the Declarations as "per policy" for all losses for all locations insured under this policy; and

   c. The amount shown on the Declarations as "per program" for all losses for all locations insured under the Motors Inventory Coverage program.

D. DEDUCTIBLES. For each covered auto, our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible, shown in the Declarations. Additionally, the following provisions apply:

1. Inventory, Demonstrator and Shop Rental Comprehensive. Regardless of the number of covered autos involved in the loss, the Comprehensive Per Loss Aggregate Deductible shown in the Declarations is the maximum deductible applicable for all comprehensive loss in any one event unless due to weather loss. Weather losses are subject to the weather deductible shown in the Declarations.

2. Weather loss.

   a. The amount of loss to each covered auto resulting from any weather loss will be reduced by the Weather Per Vehicle Deductible shown on the Declarations.

   b. Regardless of the number of covered autos involved in the weather loss, the Weather Per Loss Aggregate Deductible shown in the Declarations is the maximum deductible applicable to all loss in any one event caused by a weather loss condition unless no aggregate is shown on the Declarations applicable to weather. When no aggregate is shown in the Declarations, the amount of loss will be reduced by the Weather Per Vehicle Deductible.

   c. The weather deductible is applicable per policy and not per location.

3. False Pretense. The amount of loss under False Pretense Coverage will be subject to the Inventory, Demonstrator or Shop Rental Comprehensive deductibles as shown on the Declarations applicable to the type of covered auto to which the loss applies.

EXHIBIT B

4.  **Per Location.** All deductibles as shown on the Declarations, applicable to any loss apply separately to each insured location on the policy except as otherwise indicated in PART II - COVERAGES, D. DEDUCTIBLES 2. Weather c.

If a single loss event, other than a weather loss, at a location, causes damage to more than one vehicle type (Inventory, Demonstrator or Shop Rental), the greatest Per Loss Aggregate Deductible shown on the Declarations for Inventory, Demonstrator, or Shop Rental will apply to the entire loss due to the single event.

## PART III - CONDITIONS

A. **LOSS CONDITIONS.**
1.  **Abandonment.** There can be no abandonment of any covered auto to us.
2.  **Appraisal.** If you and we disagree on the amount of loss, either may demand an appraisal of the loss. In that event, each party will select an appraiser. The two appraisers will select an impartial umpire. The appraisers will state separately the actual cash value, the wholesale value, and/or the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
    a.  Pay its chosen appraiser; and
    b.  Bear the other expenses of the appraisal and umpire equally.
    If we submit to an appraisal, we will still retain our right to deny the claim.
3.  **Duties In The Event Of A Loss.** In the event of a loss:
    a.  You must give us:
        (1)  Prompt notice of the loss, including a description of the covered auto involved in the loss; and
        (2)  A description of how, when and where the loss occurred.
    b.  You must cooperate with us in:
        (1)  The investigation or settlement of the loss; and
        (2)  The investigation, settlement, or conduct of any suit.
        You shall not, except at your own expense, voluntarily make any payment, assume any obligation, or incur any expense.
    c.  You must:
        (1)  Notify the appropriate law enforcement authority and file a complaint if a law may have been broken;
        (2)  Take all reasonable steps to protect the covered auto from further loss. If feasible, set the covered auto aside and in the best possible order for examination. Also keep a record of expenses for emergency and temporary repairs for consideration in the settlement of the loss. Such expenses will not increase the Limit of Insurance.
        (3)  Give us a complete inventory of the covered autos, if we request one.
        (4)  Permit us to:
            i.  Inspect the property and records proving the loss;
            ii.  Take samples of damaged property for inspection, testing and analysis; and
            iii.  Inspect and appraise the covered auto before its repair or disposition.
        (5)  Under False Pretense Coverage:
            i.  File a complaint with the appropriate law enforcement authorities as soon as practicable;
            ii.  Obtain a warrant for the arrest of anyone causing the loss and/or agree to prosecute; and
            iii.  Make every reasonable effort to recover the covered auto when it is located; and
        (6)  Send us a signed, sworn, statement of loss containing the information we request to investigate the loss within 60 days after our request.  We will supply you with the necessary forms.

Contains copyrighted material of the Insurance Services Office with its permission

Additionally, you must hold us harmless against any and all claims made by other parties at interest, due to any neglect or failure on your part to comply fully with the conditions of this policy.

4. Loss Payment. In the event of loss covered by this policy, at our option, we may:
   a. Pay for, repair or replace damaged or stolen property;
   b. Return covered autos which are stolen, at our expense, and pay for the actual repair cost to the covered auto; or
   c. Take all or any part of the damaged or stolen covered auto at an agreed or appraised value.

5. Recovered Property. If either you or we recover any property after loss settlement, the party securing the recovery must give the other prompt notice. If we recover the property, at your option, the property will be returned to you. You must then return to us the amount we paid for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to PART II - COVERAGES, C. LIMITS OF INSURANCE.

6. Legal Action Against Us. No one may bring a legal action against us under this policy until there has been full compliance with all the terms of this policy.

7. Our Right To Recover From Others. If we make any payment, we are entitled to recover what we paid from other parties. If any person to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us. This person or organization must do everything necessary to secure our rights and must do nothing that would impair them.

B. GENERAL CONDITIONS.

1. Premiums.
   a. The first named insured on the policy will be responsible for the payment of all premiums;
   b. The first named insured on the policy will be the payee for any return premiums we pay; and
   c. All premiums shall be computed in accordance with our rates and rules then in effect and paid to us at the time the statement is rendered.

2. Policy Period, Coverage Territory.
   a. We will cover loss or damage to covered autos during the policy period shown on the Declarations and within the coverage territory.
   b. The coverage territory is:
      (1) The United States of America, its territories and possessions;
      (2) The Commonwealth of Puerto Rico; and
      (3) Canada.
   We will also cover loss or damage to covered autos while being transported within the coverage territory.

3. No Benefit To Bailee. We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting covered autos for a fee regardless of any other provision of this policy.

4. Assignment Or Withdrawal Of Damaged Goods. You may not assign this policy or rights under this policy without our prior written consent, except that you may assign your right to receive payment for loss to the manufacturer of the covered auto(s) involved in a covered loss. Assignment will not change the limits of insurance under this policy, and this policy will not cover any loss incurred because of the manufacturer's withdrawal of the covered auto from the market.

5. Changes. This policy contains all the agreements between you and us concerning the insurance afforded. You are authorized to make changes in the terms of this policy with our consent. If a change requires a premium adjustment, we will adjust the premium as of the effective date of the change. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

6. Examination Of Your Books And Records. We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward. We may, at our discretion, adjust your premium retroactively based upon the results of such examinations and audits.

7. **Cancellation.**
   a. You may cancel this policy by mailing or delivering to us advance written notice of cancellation.
   b. We may cancel this policy by mailing or delivering to you written notice of cancellation at least:
      (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
      (2) 30 days before the effective date of cancellation if we cancel for any other reason.
   c. We will mail or deliver our notice to your last mailing address known to us. Notice by delivery shall be effective when made; notice by mailing shall be effective three (3) days after mailing;
   d. If notice is mailed, proof of mailing will be sufficient proof of notice.
   e. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date; and
   f. If this policy is canceled, we will send the first named insured any premium refund due. If we cancel, the earned premium will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

8. **Bankruptcy.** Bankruptcy or insolvency of you or your estate will not relieve us of any obligations under this policy.

9. **Inspections and Surveys.** We have the right, but are not obligated to:
   a. Make inspections and surveys at any reasonable time;
   b. Give you reports on the conditions we find; and
   c. Recommend changes.

   Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that conditions:

   a. Are safe or healthful; or
   b. Comply with laws, regulations, codes or standards.

   This condition applies not only to us, but also to any rating, advisory, rate service or similar organization, which makes insurance inspections, surveys, reports or recommendations on our behalf.

10. **Concealment, Misrepresentation or Fraud.** This policy is void in any case of fraud by you, any employee, your partners, executive officers, directors, or shareholders at any time as it relates to this policy. It is also void if you, any other insured, your partners, executive officers, directors, or shareholders at any time, intentionally conceal or misrepresent a material fact concerning:
    a. This policy;
    b. The covered auto;
    c. Your interest in the covered auto; or
    d. A claim under this policy.

11. **Liberalization.** If we revise this policy form to broaden coverage without additional premium, your policy will automatically provide the broadened coverage as of the day the revision is effective in your state.

12. **Other Insurance.**
    a. The insurance provided by this policy is excess over any other insurance issued for your benefit. This insurance shall neither apply nor contribute to the payment of any loss until all other insurance has been exhausted.
    b. When this policy and any other policy provide coverage on the same excess basis, we will pay only our share. Our share is the proportion that the Limit of Insurance of our policy bears to the total of the limits of all the policies covering on the same basis.

Contains copyrighted material of the Insurance Services Office with its permission

VIRGINIA:   IN THE CIRCUIT COURT OF FAIRFAX COUNTY, VIRGINIA

BROWN'S DULLES MOTORS, INC.,
D/B/A BROWN'S STERLING NISSAN,

       Plaintiff,

    v.                         Civil Action No. 2014-12834

MAIDEN SPECIALTY INSURANCE
COMPANY,

       Defendant.

## NOTICE TO CLERK OF FILING OF REMOVAL TO FEDERAL COURT

      PLEASE TAKE NOTICE that Defendant Maiden Specialty Insurance Company, by

counsel, filed a Notice of Removal (a copy of which, excluding exhibits, is attached as "**Exhibit**

**A**") of this action from the Circuit Court for Fairfax County of Virginia to the United States

District Court for the Eastern District of Virginia, Alexandria Division (the "Federal Court) on

November 14, 2014 by with the Clerk of the Federal Court, thereby effectuating removal of this

action. Pursuant to 28 U.S.C. § 1446(d), this Court shall proceed no further.

Dated: November 14, 2014               Respectfully submitted,

                                     MAIDEN SPECIALTY INSURANCE
                                     COMPANY

                                     By: _____
                                     John C. Lynch (VA Bar No. 39267)
                                   Elizabeth Flowers (VA Bar No. 78487)
                                   Counsel for Defendant Maiden Specialty
                                   Insurance Company
                                   Troutman Sanders LLP
                                   222 Central Park Avenue, Suite 2000
                                   Virginia Beach, Virginia 23462
                                   Telephone:  (757) 687-7765
                                   Facsimile:  (757) 687-1504
                                   E-mail: john.lynch@troutmansanders.com
                                   E-mail: elizabeth.flowers@troutmansanders.com

EXHIBIT C

VIRGINIA:   IN THE CIRCUIT COURT OF FAIRFAX COUNTY, VIRGINIA

**BROWN'S DULLES MOTORS, INC.,**
**D/B/A BROWN'S STERLING NISSAN,**

      **Plaintiff,**

      **v.**                               **Civil Action No. 2014-12834**

**MAIDEN SPECIALTY INSURANCE**
**COMPANY,**

      **Defendant.**

## CERTIFICATE OF SERVICE

    I hereby further certify that on this 14th day of November, 2014, a true and correct

copy of the foregoing *Notice of Filing Notice of Removal* was sent via email and Federal Express

Overnight Delivery, to the following counsel of record:

<u>**Counsel for Plaintiff**</u>
Richard V. W. Adams, III (VA Bar No. 18121)
Walton & Adams, P.C.
1925 Isaac Newton Square, Suite 250
Reston, VA 20190
Telephone: (703) 748-9580
Facsimile: (703) 790-8016
radams@walton-adams.com

                              _____
John C. Lynch (VA Bar No. 39267)
Elizabeth Flowers (VA Bar No. 78487)
*Counsel for Defendant Maiden Specialty Insurance*
*Company*
Troutman Sanders LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone:  (757) 687-7765
Facsimile:  (757) 687-1504
E-mail: john.lynch@troutmansanders.com
E-mail: elizabeth.flowers@troutmansanders.com

2

EXHIBIT C